[Cite as *Andrews v. Andrews*, 2023-Ohio-293.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

| | |
|---|---|
| Amanda Ann-Carmen Andrews | Court of Appeals No. OT-22-010 |
| Appellant | Trial Court No. 2017-DR-A-136 |
| v. | |
| Bridge R. Andrews | **DECISION AND JUDGMENT** |
| Appellee | Decided: January 30, 2023 |

* * * * *

Amanda Ann-Carmen Andrews, Pro se.

* * * * *

**OSOWIK, J.**

## I. Introduction

**{¶ 1}** This appeal arises from the January 27, 2022 judgment of the Ottawa County Court of Common Pleas, Domestic Relations Division, finding appellant in contempt of court, modifying the parties' shared parenting plan, and ordering the creation of a judgment lien against any real property appellant owns in Ottawa County, Ohio. For the following reasons we reverse the trial court's judgment.

## A. Facts and Procedural Background

{¶ 2} The parties to this appeal were previously granted a divorce on November 26, 2019. Since that time, the parties have engaged in extensive post-decree litigation, including appeals to this court.[1]

{¶ 3} Relevant to this appeal, the trial court's divorce decree ordered appellant to either refinance a vehicle jointly owned by the parties and removing appellee as a debtor on the lien or to sell the vehicle with the proceeds to be divided between the parties. Appellant was also ordered to pay child support as well as tuition fees for the parties' children. Any electronic communication between the parties was to take place through a court-approved communication system rather than through direct communication. Finally, the decree ordered the parties to share the costs of the guardian ad litem's services during the proceedings equally.

{¶ 4} On June 4, 2021, appellee, proceeding pro se, filed a motion for contempt of court alleging appellant failed to refinance or sell the parties' jointly-owned vehicle in accordance with the November 26, 2019 divorce decree. Appellee's certificate of service indicated that she served the motion via Certified U.S. Mail. The certificate also indicated that she emailed a copy of the motion to appellant, who was also appearing pro se. The record reflects that the Ottawa County Clerk of Courts office also attempted

---

[1] For a full recitation of post-decree proceedings prior to this appeal, see *Andrews v. Andrews,* 179 N.E.3d 1050, 2022-Ohio-3854 (6th Dist.).

2.

Certified U.S. Mail service on appellant at the identified address. The July 13, 2021 return on service notes that the attempted service went "unclaimed." The record shows that appellee made no further attempts at service of the June 4, 2021 motion for contempt.

{¶ 5} Appellee filed another motion for contempt of court on June 17, 2021. In this motion, appellee alleged that appellant failed to pay her child support as ordered in their divorce decree and had harassed appellee telephonically outside of the court-approved communication system. With this motion, appellee included a praecipe for service instructing the clerk of courts to serve the motion both via Certified U.S. Mail and to furnish a copy to the Ottawa County Sheriff's for personal and residential service. The July 13, 2021 return on service notes that the attempted Certified U.S. Mail service went "unclaimed." The return does not reflect the status of the Ottawa County Sheriff's office's attempts on service of the July 17, 2021 motion. As with the prior motion, the record shows that appellee made no further attempts to serve the June 17, 2021 motion for contempt.

{¶ 6} On July 6, 2021, appellant appeared for a purge hearing after having been previously held in contempt on October 14, 2020. Appellant began that hearing discussing the recently-filed motions for contempt. Appellant informed the trial court that she had not yet been served with either of the June, 2021 motions in the following exchange:

3.

APPELLANT: Thank you, your honor. I received—well, actually, it was probably around June 14th, [appellee's] motion, as well as a second motion for contempt issues, but we're just here for the—just the—

THE COURT: I don't know if you had service on your motion for contempt, ma'am; that I don't know.

APPELLEE: (Unitelligible)—I have not yet—[an unidentified third party] told me that UPS—

THE COURT: Okay.

APPELLEE: —she hadn't picked—

THE COURT: If you—if you have a copy of it, would you please give that to her today in open court, please.

APPELLANT: Well, that's what we said—I was going to say, your honor, is, I will accept service of that one, 'cause there was an issue—the first issue, your honor, is the issue—

THE COURT: Hold on just a second.

APPELLANT: Sure.

THE COURT: So you accept service on that motion. We can set it for hearing?

APPELLANT: I do, your honor.

Following this exchange, the parties moved into their arguments on the merits of whether appellant had satisfied the purge conditions on her previous contempt finding. There was no further reference to the motion provided to appellant during the hearing.

{¶ 7} Appellee filed her next post-decree motion on August 19, 2021. In addition to a separate request unrelated to this appeal, that motion requested that the trial court grant an emergency order modifying appellant's parental rights. Appellee relied on appellant's alleged inability to comply with court orders in unrelated matters, her recent arrest record, and her inability to properly supervise the children due to her alcohol consumption as the basis for modifying the parenting plan. Appellee filed a praecipe instructing the clerk of courts to serve the August 19, 2021 motion via Certified U.S. Mail. The record shows that this service was never attempted. The trial court set a hearing for hearing on October 27, 2021. The notice identified the subject of the hearing as a "motion hearing."

{¶ 8} On October 6, 2021, appellee filed her third[2] motion for contempt. In this motion, appellee argued that appellant was in contempt of her obligations under the parties' divorce decree for failing to pay costs related to the parties' children's school tuition. Appellee's certificate of service stated that this motion was sent to appellant via email only. The record shows that appellee did not file a praecipe to serve appellant by any other method.

---

[2] As addressed in this appeal.

5.

{¶ 9} Two days prior to the October 27, 2021 hearing on appellee's emergency motion, appellee filed a motion to continue the hearing citing transportation issues. The trial court granted appellee's motion. The trial court then set a "show cause hearing" for December 17, 2021. On December 13, 2021, appellee filed her own motion to continue the December 17, 2021 hearing. The trial court denied appellee's motion and conducted the hearing on the assigned date.

{¶ 10} At the hearing, the trial court noted that appellant, who was in the custody of the Ottawa County Sheriff's Department on an unrelated matter, declined to be transported for her appearance. The trial court stated:

> She was requested to be here. She refused to attend. Furthermore, my recollection and the record will bear me out is that she accepted this date in open court on the record as a date for hearing on these motions, on motions that were pending, not the emergency motions because it wasn't pending at the time, but the motions that were pending, she accepted this date. So with all of that, I am going to have the matter proceed and call the case.

The trial court then proceeded with the hearing, permitting appellee to offer her sworn testimony as to the merits of her August 19, 2021 emergency motion to modify appellant's parental rights. Appellee also offered testimony in support of her June 4, 2021, June 17, 2021, and October 6, 2021 motions to hold appellant in contempt. Appellee withdrew the portion of her June 17, 2021 motion related to appellant's alleged

6.

failure to pay child support. The trial court also accepted the guardian ad litem report regarding the parties' parental rights, but did not receive any testimony from the guardian or appellee as to the contents of that report.

{¶ 11} On January 26, 2021, the trial court granted appellee's emergency motion to modify the shared parenting plan as well as all three of appellee's motions for contempt. The trial court's judgment was memorialized on January 27, 2021.

## B. Assignments of Error

{¶ 12} Appellant timely appealed and asserts the following errors for our review:

1. The trial court erred by finding appellant in contempt of court given improper service, lack of statutory notice, and lack of hearing.

2. The trial court erred by changing the custody agreement of the parties without the presence of the guardian ad litem [and] appellant; as well as without proper notice and evidence of appellee's claims.

3. The trial court erred in ordering matters involving the real property of the parties as it was not an issue pending before the court at the time of hearing.

Because they are interrelated, we address appellant's first and second assignments of error together.

7.

## II. Law and Analysis

### A. The record shows that appellant was denied her due process rights of notice and an opportunity to be heard on each of appellee's motions for contempt.

{¶ 13} In her first assignment of error, appellant argues that she was not properly served, pursuant to R.C. 2705.031, with appellee's June 4, 2021, June 17, 2021, and October 6, 2021 motions for contempt. In her second assignment of error, appellant argues that she was not properly served, pursuant to R.C. 3109.04, with appellee's August 19, 2021 emergency motion to modify her parental rights under the divorce decree. Appellant also argues, in each assignment, that she did not receive notice of the issues to be addressed at the December 17, 2021 hearing, denying her of due process.

#### 1. Required Service of Appellee's Motions for contempt and scope of required notice

{¶ 14} Before addressing the merits of appellant's assigned errors, we must determine the manner of service to which she was entitled on appellee's motions and the scope of any required notice of the allegations against her before being held in contempt of court. Appellee's June 4, 2021 motion for contempt alleges that appellant failed to comply with the trial court's order related to the division of personal property—a vehicle jointly-owned by the parties. Appellee's June 17, 2021 motion alleged that appellant disobeyed the trial court's order by harassing appellee telephonically. Appellee's October 6, 2021 motion alleged appellant failed to pay for their children's school tuition.

8.

{¶ 15} Generally, trial courts have inherent jurisdiction to enforce their orders through contempt proceedings. *Cincinnati v. Cincinnati Dist. Council 51, Am. Federation of State, County, and Municipal Employees, AFL-CIO,* 35 Ohio St.2d 197, 299 N.E.2d 686 (1973) ("The power to punish for contempt is said to be inherent in the courts and to exist independently from express constitutional or legislative comment."). An individual accused of contempt must be afforded due process before a court can order punishment. *McNall v. Cunard,* 6th Dist. Sandusky No. S-07-013, 2008-Ohio-378, ¶ 20. Due process is a constitutional right arising under both the United States and Ohio Constitutions. *Sassya v. Morgan,* 11th Dist. Trumbull No. 2018-T-0013, 2019-Ohio-1301, ¶ 28, citing *State v. Hochhausler,* 76 Ohio St.3d 455, 459, 668 N.E.2d 457 (1996). Due process for contempt proceedings includes providing the alleged contemnor with notice of the allegations and an opportunity to be heard on those allegations. *Id.*; R.C. 2705.03. Importantly, R.C. 2705.03 does not specify the form of notice an alleged contemnor must receive for contempt in violation of R.C. 2705.02. That notice, however, "to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that the [contemnor] has reasonable opportunity to prepare for *the specific issues presented.*" *Id. See also State ex rel. Johnson v. County Court of Perry County,* 25 Ohio St.3d 53, 495 N.E.2d 16 (1986) (emphasis added).

{¶ 16} R.C. 2705.02 codifies Ohio courts' inherent authority and identifies specific instances of contempt that are subject to sanctions. This inherent jurisdiction

9.

permits trial courts to enforce the terms of divorce decrees as they relate to the division of marital property. *See Godbey-Martin v. Godbey,* 6th Dist. Lucas No. L-08-1046, 2009-Ohio-662 (holding that it was within the trial court's discretion to determine whether a party was in contempt of the divorce decree for failing to deliver personal property to former spouse); *Westhoven v. Westhoven,* 6th Dist. Ottawa No. OT-10-037, 2011-Ohio-3610 (trial court did not abuse its discretion in finding appellee was not in contempt for failing to deliver personal property to former spouse). A motion for contempt alleging the failure to make tuition payments is also governed by the R.C. 2705.02(A)'s due process requirements. *See Blazic v. Blazic,* 1st Dist. Nos. C-040414, C-040440*,* 2005-Ohio-4417 (holding that a motion for contempt for failure to pay school expenses are enforced as disobedience of a lawful order of the court pursuant to R.C. 2705.02(A)).

{¶ 17} We first address appellant's argument as to an alleged lack of statutory service of each motion for contempt, collectively, before reviewing each motion individually as to appellant's due process arguments.

a. **Appellant was *not* entitled to notice of the contempt allegations through the issuance of a summons pursuant to R.C. 2705.031(C).**

{¶ 18} As to each of appellee's motions for contempt, appellant argues that she was entitled to service of a summons pursuant to R.C. 2705.031(C) before the trial court could find her in contempt. This argument is without merit.

{¶ 19} When the alleged contempt relates to the failure to pay ordered support or interfering with another parties' parenting rights, R.C. 2705.031(B)(1) and (2) establishes

10.

a specific procedure that must be followed before the trial court can determine the contempt motion. For a motion alleging the failure to pay under a support order, the alleged contemnor is entitled to service of process pursuant to R.C. 2705.031(C) which states "[i]n any contempt action initiated pursuant to division (B) of this section, the accused shall appear upon the summons and order to appear that is issued by the court." The statute then identifies the specific contents that must be included in the summons. R.C. 2705.031(C)(1) through (C)(4). The issuance of this summons and its contents is mandatory before a trial court may hold an alleged contemnor in contempt on a motion pursuant to R.C. 2705.031(B). *See In re. Yeauger,* 83 Ohio App.3d 493, 615 N.E.2d 689 (3d Dist.1992), citing *Courtney v. Courtney,* 16 Ohio App.3d 329, 475 N.E.2d 1284 (3d Dist.1984) (holding that the statutory requirements ensuring due process as described in R.C. 2705.031(C) are mandatory before an alleged contemnor may be held in contempt.).

{¶ 20} The record here shows that the trial court did not issue a summons pursuant to R.C. 2705.031(C) in response to any of appellee's motions for contempt. Appellant argues that the trial court's failure to issue a summons renders service of all three motions for contempt invalid. Appellant is incorrect. The issuance of a summons is only required when the alleged contempt is for failing to pay a support order. Only appellee's June 17, 2021 motion alleged that appellant was in contempt for failing to pay the child support ordered in the parties' divorce decree. Appellant was certainly entitled to service of a properly-issued summons on that motion pursuant to R.C. 2705.031(C). However,

11.

appellee eventually withdrew that allegation at the December 17, 2021 hearing and appellant was not found in contempt on an allegation for which she did not receive the required summons. Instead, the trial court only found appellant in contempt for allegations that arose under R.C. 2705.02 for which no summons was required. Therefore, we reject appellant's argument that the lack of a summons issued to her serves as a basis for reversing the trial court's judgment.

{¶ 21} This finding addresses only one basis on which appellant argues the trial court erred. We address her remaining arguments as they apply to each individual motion.

### b. Appellee's June 4, 2021 motion for contempt

{¶ 22} In her June 4, 2021 motion for contempt, appellee alleged that appellant did not comply with the trial court's order to either sell a jointly-owned vehicle or refinance it into appellant's name only. Appellee attempted to serve appellant with the June 4, 2021 motion via certified U.S. Mail and email. The record clearly shows that the attempted certified U.S. Mail service went "unclaimed." Appellee made no further attempts to serve this motion. At the July 6, 2021 hearing on a prior contempt finding, appellant stated that she had not been served with either of appellee's most recent motions for contempt. While appellant agreed to accept service of one motion for contempt, both appellee's June 4, 2021 and June 17, 2021 motions for contempt were

12.

pending at the time of that hearing. The record does not specify which motion was personally served at the hearing.

{¶ 23} It is undisputed that R.C. 2705.05 requires the alleged contemnor be provided with notice of the allegations against them and an opportunity to be heard on those allegations. *McNall v. Cunard,* 6th Dist. Sandusky No. S-07-013, 2008-Ohio-378, at ¶ 20. The type of notice—summons and personal service, service upon counsel, constructive notice, etc.—that must be afforded to the alleged contemnor is the subject of significant dispute among Ohio's appellate court districts. *See In re. Contemnor Caron,* 744 N.E.2d 787, 110 Ohio Misc.2d 58, (C.P. 1992).[3] When service of a motion alleging indirect civil contempt is disputed, this court has held that "notice which apprises the

---

[3] (There is disagreement among the courts regarding the technical requirements of service of notice of contempt charges. *McWhorter v. Curran*, 57 Ohio App. 233, 244, 423, 13 N.E.2d 362 (1935); "It is essential * * * that [the contemnor] have notice * * * either actual or by service * * * upon him;" *McGill v. McGill*, 3 Ohio App.3d 455, 457, 445 N.E.2d 1163 (1982): "[N]otice which is reasonably calculated to reach the individual alleged to be in contempt * * * will withstand objection. Despite the potential for imprisonment there is no requirement that such notice must be personally served upon the individual"; *Rose v. Rose*, Franklin No. 96APF09-1150, 1997 WL 142718 (Mar. 31, 1997), citing *State v. Union,* Ohio St. 75, 78, 173 N.E.2d 331 (1961), for rule that "[s]ervice upon [the contemnor] is not required when he has actual notice." See also *Hansen v. Hansen*, 132 Ohio App.3d 795, 800, 726 N.E.2d at 560–561 (1999) (personal service may be required under the Civil Rules depending upon the circumstances). Contrary to *Hansen,* see *Courtney v. Courtney*, 16 Ohio App.3d 329, 475 N.E.2d 1284 (3d Dist.1984) (Civil Rules do not apply to contempt proceedings under Civ.R. 1(C)(7), since they are sui generis actions, not civil actions). Contrary to *Courtney,* see *Quisenberry v. Quisenberry,* 91 Ohio App.3d 341, 632 N.E.2d 916 (1993) (service of contempt citation and notice must be in accordance with Civil Rules)).

13.

alleged contemnor of the nature of the charge against [them] so that [they] may prepare a defense is sufficient for due process purposes."[4] *Camp-out, Inc. v. Adkins,* 6th Dist. Wood No. WD-06-057, 2007-Ohio-3946, ¶ 21, citing *Cincinnati Dist. Council 51,* 35 Ohio St.2d 197, 203, 299 N.E.2d 686 (1973). In order for that notice to comply with due process requirements, it must "set forth the alleged misconduct with particularity." *Sassya,* 11th Dist. Trumbull No. 2018-T-0013, 2019-Ohio-1301, at ¶ 28.

{¶ 24} Here, we find that *if* the motion for contempt appellant accepted at the hearing was the June 17, 2021 motion, she could not have accepted service of appellee's June 4, 2021 motion. Because there is nothing in the record to show that appellant was otherwise served with the June 4, 2021 motion, the complete failure of service of that motion is sufficient to show that appellant was denied her right to notice of the allegations in that motion. However, the record is unclear as to which motion was served so we also address whether appellant was afforded her due process rights had she accepted service of the June 4, 2021 motion.

---

[4] "We determine the nature of contempt proceedings, primarily, based on the purpose the trial court sought to accomplish in imposing the sanction." *State v. Arnold,* 6th Dist. Lucas Nos. L-20-1007, L-20-1008, 2020-Ohio-3749, ¶ 11. "If the sanction is remedial, or seeks to coerce conduct for the benefit of the complainant and not the court, the proceeding is generally a civil contempt proceeding." *Id.* at ¶ 12. "'Often, civil contempt is characterized by conditional sanctions' and the contemnor has the ability to avoid the sanction by complying with the court's order." *Id.* "In contrast, a criminal contempt proceeding involves a sanction meant to punish and vindicate the court's authority." *Id.* at ¶ 13.

14.

{¶ 25} We find that accepting service of the June 4, 2021 motion satisfies the first part of appellant's due process rights. This does not end our analysis, however, and we find that the trial court's inconsistent orders as to when that motion was to be heard deprived appellant of her right to be heard on those allegations. The record shows that the trial court scheduled three separate hearings following appellee's filing of her motions for contempt and her emergency motion to modify the shared parenting plan. On June 22, 2021, the trial court set a "motion hearing" for July 6, 2021. In the notice of assignment, the trial court specified that this was a "hearing on motion for imposition of sentence" on its previous contempt finding against appellant. On August 30, 2021, the trial court scheduled a "motion hearing" for October 27, 2021. The notice of assignment does not identify with any particularity which motions—of which at least three were pending at the time—would be addressed at the hearing. On November 10, 2021, after granting appellee's motion for continuance, the trial court scheduled a "show cause hearing scheduled before Judge Yarbrough" for December 17, 2021. Again, that notice does not specify the motions to be addressed at the hearing or the manner of service on appellant. At this point, appellee had three pending motions for contempt filed against appellant as she had filed a third motion for contempt on October 6, 2021.

{¶ 26} On December 13, 2021, appellant filed her own motion to continue the December 17, 2021 hearing. Appellant informed the court that she was reviewing all motions pending against her as well as reviewing documents necessary for her to prepare

15.

her defense to the contempt allegations. Appellant sought the continuance so that she could retain counsel to help her prepare for the hearing. The trial court did not address appellant's motion until the hearing. At that time, the trial court noted that appellant, who was in the custody of the Ottawa County Sheriff's Department on an unrelated matter, declined to be transported to the courthouse for the hearing. The trial court denied appellant's motion to continue stating that no attorney had entered an appearance on her behalf and that postponement of the hearing would prejudice appellee who had traveled to attend. The trial court also stated "my recollection and the record will bear me out is that [appellant] accepted this date in open court on the record as a date for hearing on these motions, on motions that were pending, not the [motion to modify] because it wasn't pending at the time, but the motions that were pending, she accepted this date. So with all of that, I am going to have the matter proceed and call the case."

{¶ 27} The record does not support the trial court's recollection. As noted above the record does not specify which motion appellant accepted service of at the July 6, 2021 hearing. Moreover, there is no reference in the record that appellant accepted the December 17, 2021 hearing date as the date on which all of appellee's motions for contempt would be addressed. Lastly, the trial court's orders setting the hearing dates are ambiguous as to what motions were to be heard. The August 30, 2021 notice described the upcoming hearing only as a "motion hearing." The November 10, 2021 notice rescheduling that hearing did describe it as a "show cause" hearing but did not offer any

16.

specifics as to which of the three motions that would be heard on that date. While appellant clearly learned that the hearing was to take place, as evidenced by her December 13, 2021 motion to continue, there is nothing in the record to show when she learned of the hearing. What we are left with, then, is a record that is ambiguous as to what motions were to be heard at the December 17, 2021 hearing and appellant's attempt to receive more time to prepare a defense to all of the pending motions.

{¶ 28} "[T]he element of notice for a finding of indirect contempt is a prerequisite for a valid contempt finding." *Goe v. Goe,* 5th Dist. Stark No. 2006CA0341, 2007-Ohio-6767, ¶ 31. "The notice essential to due process of law is notice that affords a reasonable opportunity to be heard." *State ex re. Miller v. Wallar,* 10th Dist. Franklin No. 04AP-574, 2004-Ohio-6612, ¶ 8, citing *New York Cent. R. Co. v. Public Utilities Comm.*, 157 Ohio St. 257, 264, 105 N.E.2d 410, (1952). The open question as to whether appellant was ever served with appellee's June 4, 2021 motion, and the ambiguous notices of hearing on the motions to be heard, provide no bases on which appellant could discern the allegations against her to prepare a defense or provide her with an opportunity to be heard.

{¶ 29} We recognize that appellant's refusal to be transported to the December 17, 2021 hearing raises concerns as to whether she waived her right to argue the lack of due process in this appeal. Due process is a constitutional right. *Sassya,* 11th Dist. Trumbull No. 2018-T-0013, 2019-Ohio-1301, at ¶ 28. The waiver of a constitutional right must be

17.

made knowingly, intelligently, and voluntarily. *Matter of C.B.,* 2020-Ohio-5151, 161 N.E.3d 770, ¶ 12 (4th Dist.). Appellant's refusal to attend the hearing was certainly ill-advised and may subject her to further sanctions by the trial court. In light of the record before us, however, we cannot say that appellant refusing to appear constitutes a knowing and intelligent waiver of her opportunity to be heard on the contempt issues when the trial court's notices of hearing were deficient as to the specific issues the trial court would address at that hearing. As a result, we find that appellant did not waive her right to due process on the contempt issues and they have been fairly raised in this appeal.

{¶ 30} In sum, notice and an opportunity to be heard are the due process rights owed to appellant. We find that the significant questions as to service of the motion and the scope of the notices of hearing precluded appellant from being heard on the allegations against her. Therefore, we find that the trial court erred in granting appellee's June 4, 2021 motion for contempt.

### c. Appellee's June 17, 2021 motion for contempt

{¶ 31} In appellee's June 17, 2021 motion for contempt, she argued that appellant had violated the trial court's order by communicating with her directly rather than through the court-approved communication system. As with appellee's June 4, 2021 motion, we cannot determine which motion was served at the July 6, 2021 hearing. If the June 17, 2021 motion was not served, appellant clearly was denied her right to notice of the allegations against her. In the scenario in which the June 17, 2021 motion was served

18.

at the hearing, we have already found that the trial court's ambiguous notices of hearing, along with its erroneous belief that appellant had accepted a hearing date on which to argue the contents of appellee's motions, shows that appellant was denied her right to be heard. For these reasons, we find that appellant was denied her right to notice and the opportunity to be heard on appellee's June 17, 2021 motion. As a result, the trial court erred in granting that motion.

### d. Appellee's October 6, 2021 motion for contempt

{¶ 32} In her October 6, 2021 motion for contempt, appellee alleged that appellant had not paid her portion of the parties' children's tuition expenses as ordered in the divorce decree. Appellant was entitled to the same due process for this motion—notice and opportunity to be heard—as for appellee's June 4, 2021 and June 17, 2021 motions for failing to comply with a court order as described in R.C. 2907.02. *See Blazic v. Blazic,* 1st Dist. Hamilton Nos. C-040414, C-040440*, 2005-Ohio-4417.

{¶ 33} As to service, we note that the October 6, 2021 motion clearly was not served at the July 6, 2021 hearing as it was filed three months later. Appellee's motion did include a certificate of service alleging that the motion was served on appellant via electronic mail the same date that it was filed. This creates a rebuttable presumption that the motion was served on appellant. *Yost v. McNea,* 6th Dist. Erie No. , 2021-Ohio-2145, ¶ 22, citing *Kapszukiewicz v. Samual,* 6th Dist. Lucas No. L-06-1206, 2007-Ohio-2152, ¶ 14 (holding that a moving party's compliance with the Ohio Rules of Civil Procedure

creates a rebuttable presumption that service has been made). "The complaining party bears the burden of rebutting the presumption." *Id.* Here, appellant offers only her argument that she did not receive the October 6, 2021 motion. This is insufficient to find that appellant was not served with a copy of the motion. *Cf. Calvary Invest., L.L.C. v. Clevenger,* 6th Dist. Lucas No. L-05-1103, 2005-Ohio-7003 (holding that an uncontroverted affidavit by the complaining party is sufficient to rebut the presumptions of service).

{¶ 34} Therefore, we find appellant's argument that she was not served with the October 6, 2021 motion is without merit. Nevertheless, we find that appellant was denied her due process rights of notice and an opportunity to be heard on that motion. As our analysis as to appellee's June 4, 2021, and June 17, 2021 motions is equally applicable to appellee's October 6, 2021 motion, we find that the trial court likewise denied appellant her due process right to be heard on appellee's October 6, 2021 motion for contempt and erred in granting the same.

### 2. Conclusion as to appellee's motions for contempt

{¶ 35} The record reflects significant procedural issues related to appellant's notice of the contempt allegations against her and her opportunity to be heard on those allegations. As a result, we find that appellant was denied her due process rights when the trial court granted appellee's June 4, 2021, June 17, 2021, and October 6, 2021

20.

motions for contempt. For these reasons, we find appellant's first and second assignments of error well-taken as to the trial court's error in granting these motions.

**B. The record shows that appellee failed to invoke the trial court's continuing jurisdiction to consider her motion to modify the parties' shared parenting plan.**

{¶ 36} On August 19, 2021, appellee filed a motion requesting that the trial court modify the parties' shared parenting plan by "suspending" appellant's rights to visitation with the parties' children.[5] The trial court granted appellee's motion and modified the parties' shared parenting plan by rescinding all of appellant's visitation rights. In her second assignment of error, appellant argues that she did not receive proper notice of the evidence against her on which appellee sought to modify the parties' shared parenting plan. We agree.

{¶ 37} A post-decree motion to modify a shared parenting plan is governed by R.C. 3109.04. *Fisher v. Hasenjar,* 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 21, 29. The party seeking such a modification must invoke the trial court's continuing jurisdiction through Civ.R. 75(J). *Hansen v. Hansen,* 21 Ohio App.3d 216, 218, 486 N.E.2d 1252 (3d Dist.1985). Civ.R. 75(J) states:

---

[5] We note that appellee's pro se motion does not specify the statutory vehicle under which she sought suspension of the appellee's rights. Because appellee's motion does not satisfy the procedural requirements of any other statutory provision that might authorize a trial court's temporary suspension of appellant's rights—for example, filing a petition for a protection order under R.C. 3113.31—we presume that appellee sought modification of the parties' shared parenting plan pursuant to R.C. 3109.04.

21.

The continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Civ.R. 4 to 4.6. When the continuing jurisdiction of the court is invoked pursuant to this division, the discovery procedures set forth in Civ.R. 26 to 37 shall apply.

"Where the notice requirements under Civ.R. 75(J) are not met, the court's continuing jurisdiction is not invoked, the court lacks personal jurisdiction over the nonmoving party, and it may not consider a motion for modification of custody, child support or spousal support." *Grundey v. Grundey,* 10th Dist. Franklin No. 14AP-420, 2015-Ohio-1469, ¶ 11, citing *Hamad v. Hamad,* 10th Dist. Franklin No. 08AP–53, 2008-Ohio-4111, ¶ 3; *Rondy v. Rondy,* 13 Ohio App.3d 19, 21–22, 468 N.E.2d 81 (9th Dist.1983); *Szymczak* at 711; *Carson v. Carson,* 62 Ohio App.3d 670, 673, 577 N.E.2d 391 (12th Dist.1989); *Hansen* at 219. In light of the specific requirements of Civ.R. 75(J), we review the record to determine, as a threshold matter, whether appellee properly invoked the trial court's continuing jurisdiction to consider her motion to modify.

{¶ 38} Contemporaneous with her motion to modify, appellee filed a praecipe instructing the clerk to "issue service of a court-stamped copy of the [motion] (once a hearing date is set) via certified mail upon [appellant]" at two addresses. Notably absent from appellee's praecipe is the request for issuance of a summons in accordance with Civ.R. 75(J). That deficiency notwithstanding, the record shows that no summons or any

22.

other copy of appellee's motion purporting to be a summons was ever served on appellant through the clerk's office. When the issuance of a summons is required, it is the duty of the party seeking service to accomplish proper service on the opposing party. *See Capital One Bank v. Coleman,* 6th Dist. Lucas No. L-18-1173, 2019-Ohio-3700, ¶ 11, citing *Griffin v. Braswell,* 187 Ohio App.3d 281, 2010-Ohio-1597, 931 N.E.2d 1131, ¶ 165 (6th Dist.). Appellee failed to satisfy this burden. Appellee filed a single praecipe requesting service of her motion to modify. That praecipe did not generate the summons necessary to invoke the trial court's continuing jurisdiction pursuant to Civ.R. 75(J). The record shows that appellee made no efforts to cure the lack of service. As a result, the trial court had no continuing jurisdiction to modify the parties' shared parenting plan and the trial court erred in granting appellee's August 19, 2021 motion requesting that modification.

**C. Appellant's first and second assignment of error are found well-taken.**

{¶ 39} For the foregoing reasons, we find that the trial court denied appellant's due process right to notice and an opportunity to be heard on appellee's June 4, 2021, June 17, 2021, and October 6, 2021 motions for contempt. We also find that the trial court lacked jurisdiction over appellant related to appellee's August 19, 2021 motion to modify the parties' shared parenting plan. Therefore, we find appellant's first and second assignments of error well-taken.

23.

**D. The trial court's erred in attempting to create a judicial lien on appellant's real property.**

{¶ 40} In her third assignment of error, appellant argues that the trial court erred when it held that its January 27, 2022 judgment entry created a judicial lien on any real property owned by appellant. In its judgment entry, the trial court ordered that its judgment reallocating the parties' obligation to pay the guardian ad litem's fees—appellant to pay 75%, appellee to pay 25%—creates "a judicial lien against any real estate owned by the Plaintiff in this county and that any proceeds of sale be held by the clerk of courts until disbursed by this court." Appellant argues that the issue of a judicial lien was not pending before the trial court at the time so the trial court aired in addressing that issue. We agree, albeit for a different reason than that identified by appellant.

{¶ 41} Initially, we note that appellant does not challenge the trial court's reallocation of guardian ad litem fees among the parties in its January 27, 2022 judgment entry. Therefore, we limit our analysis only to the trial court's "creation" of a judicial lien.

{¶ 42} Judgment liens are governed by R.C. 2329.02 which states:

Any judgment or decree rendered by any court * * * within this state shall be a lien upon lands and tenements of each judgment debtor with any county of this state *from the time there is filed in the office of the clerk of court of common pleas of such county a certificate of judgment,* setting forth the court in which the same was rendered, the title and number of the

action, the names of the judgment creditors and judgment debtors, the amount of the judgment and costs, the rate of interest, if the judgment provides for interest, and the date from which such interest accrues, the date of rendition of the judgment, and the volume and page of the journal entry thereof.

(emphasis added). "Judgment liens are a creature of statute." *Dietl v. Sipka,* 185 Ohio App.3d 218, 2009-Ohio-6225, 923 N.E.2d 692, ¶ 18. "[T]he creation, existence and validity of judgment liens are strictly dependent upon statutory provisions." *Id.* (internal citations omitted). "It is well-settled, 'when a certificate of judgment is filed [pursuant to R.C. 2923.02] with the county's clerk of courts office, a lien is immediately created[.]'" *Fifth Third Bank v. Mufleh,* 6th Dist. Lucas Nos. L-04-1188, L-04-1157, L-04-1262, 2005-Ohio-2351, ¶ 22. Conversely, "no judgment lien is created or enforceable against a real property unless a certificate of judgment is filed in accordance with R.C. 2329.02." *Dietl* at ¶ 16. Put simply, the trial court's attempt to "create" a judicial lien simply by imposing its judgment rather than a party filing a certificate of judgment is entirely invalid as a matter of law. [6]

---

[6] We note that the trial court's judgment does not order a specific monetary award but only orders that any amount obtained by the clerk of courts through its "creation" of a lien is to be "equitably divided by the court for the payment of Guardian ad litem fees and other costs and fees due to the Defendant." We offer no opinion as to whether that judgment is one on which a certificate of judgment could be issued as it was not raised by appellant and is not relevant to our resolution of this assignment of error.

25.

**{¶ 43}** App.R. 12(B) states:

[w]hen the court of appeals determines that the trial court committed error prejudicial to the appellant, and that the appellant is entitled to have judgment or final order rendered in his favor as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court and render the judgment or final order that the trial court should have rendered, or remand the cause to the court with instructions to render such judgment or final order.

Here, the trial court, without any legal authority, ordered the Ottawa County Clerk of Courts office to "hold" any proceeds from the sale of any real property appellant owns through the unauthorized "creation" of a judicial lien. Although it is unclear what mechanism the trial court intends for the clerk to utilize to impound those proceeds, it cannot be disputed that any attempt to hold these proceeds by claiming any priority as creditor through a fictitious lien is to appellant's prejudice. As a result, the trial court has entered judgment against appellant, to her prejudice, that constitutes error as a matter of law. Pursuant to App.R. 12(B), we find appellant's third assignment of error well-taken and reverse the judgment of the trial court. Further, we remand this matter to the trial court to enter judgment striking the improper "creation" of a judicial lien to avoid any further prejudice against appellant.

26.

### III. Conclusion

**{¶ 44}** We find each of appellant's assignments of error well-taken. We therefore reverse the January 27, 2022 judgment of the Ottawa County Court of Common Pleas, Domestic Relations Division and remand this matter for proceedings consistent with this opinion.

**{¶ 45}** Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment Reversed,<br>
and Remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.          _____
                                                          JUDGE
Thomas J. Osowik, J.

                                             _____
Gene A. Zmuda, J.                                JUDGE
CONCUR.

                                             _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.